CHARLES D. LOUGEE *vs.* GEORGE W. BRAY and others.

.January 14, 1890.·

<table><tr><td>42</td><td>323</td></tr><tr><td>76</td><td>362</td></tr></table>

Evidence—Depositions.—H. and B. came into an action as intervenors, each by a separate pleading, claiming for himself the property which was the subject of the action, but tendering the same issue as to the facts which constituted plaintiff's alleged cause of action.    *Held*, that a deposition taken on the application of H., and upon interrogatories propounded by him, and cross-interrogatories propounded by the plaintiff, bearing exclusively upon such issue, was admissible as evidence in favor of B. as well as H.

Appeal by plaintiff from a judgment of the district court for Hennepin county, in favor of the intervenor Briggs, after a trial by *Hicks*, J.

*Little & Nunn*, for appellant.

*D. W. Ellis*, for respondent.

MITCHELL, J.·  The principal question here presented is whether the deposition of the defendant Usher, taken on the motion of the intervenor Herring, and upon interrogatories propounded by him and cross-interrogatories propounded by plaintiff, was admissible in evidence in favor of the intervenor Briggs, and against the plaintiff. The action was brought by the plaintiff, May 18, 1887, to enforce a resulting trust in a piece of real estate for the satisfaction of a judgment which he had obtained against the firm of Beede & Bray on an indebtedness contracted in December, 1886.    The land in question

had been conveyed in March, 1885, by one Telfer to the defendant Usher, and by Usher conveyed to defendant William L. Bray, May 5, 1887. The ground upon which plaintiff claimed the resulting trust in his favor was that the consideration for the conveyance from Usher to W. L. Bray (alleged to have been $1,500) was paid by George W. Bray. George W. Bray was a member of two copartnerships, to wit, Beede & Bray, composed of himself and one Richard D. Beede, and Bray & Robinson, composed of himself and one J. W. Robinson. In February, 1887, Beede & Bray had made an assignment, under the insolvent law, for the benefit of creditors, to the intervenor Herring; and in April, 1887, Bray & Robinson made a similar assignment of all their firm and individual property to one Huntington, who was succeeded as assignee by the intervenor Briggs. Various claims of creditors had been filed and proved under each of these assignments, among those thus proved under the latter assignment being a debt against George W. Bray individually, contracted in 1886, and on which judgment had been obtained. In the inventory of his assets filed in the assignment of Bray & Robinson, George W. Bray included the land in dispute, and W. L. Bray conveyed it (subsequent to the commencement of this action) to Briggs, "assignee of George W. Bray and Joseph W. Robinson." The two assignees, Briggs and Herring, came into the action as "intervenors," each claiming the lot as assets of George W. Bray,—Briggs under the assignment of Bray & Robinson and the deed from W. L. Bray, and Herring under the assignment of Beede & Bray. The issue tendered by plaintiff, as already stated, was that the land was purchased from Usher by George W. Bray, and the consideration paid by him, while the conveyance was made to William L. Bray. Both intervenors, who put in separate pleadings, put this in issue, both claiming that George W. Bray purchased the property of Telfer in 1885, and had the conveyance made to Usher, who paid nothing, and that Usher in May, 1887, at the request of George W. Bray, conveyed to William L. Bray, without any consideration whatever being paid. Hence, although Briggs and Herring each claimed the property against the other, the issue between plaintiff and Briggs, and plaintiff and Herring, as to the nature of the conveyances from Telfer to Usher, and from Usher

to W. L. Bray, (upon which plaintiff's rights depended,) was identical, and common to both intervenors. The deposition of Usher related solely to that issue, the substance of it being that George W. Bray had the land conveyed to him by Telfer, that he (Usher) did not pay the consideration, and that he subsequently, at George W. Bray's request, conveyed to W. L. Bray, and that for this conveyance no consideration was received by or paid to him. Upon the trial this deposition, taken, as already stated, upon interrogatories propounded by Herring in his own behalf, was received in evidence in behalf of Briggs. Plaintiff's contention is that Briggs was not a party to the deposition; that it was not taken on the issues between him and plaintiff; and therefore it was not admissible in his favor.

We are not referred to, and have not found, any case entirely like the present on the facts. The only cases that we have found having any particular bearing upon the principle involved here are where the question was as to the admissibility, in a second action, of a deposition taken in a former one. In all these cases it would seem that the admissibility of the deposition is made to turn upon the identity of the matters in issue, and the opportunity of the party against whom the deposition is offered to cross-examine, rather than upon the perfect mutuality between the parties, as is the case where a judgment is offered in evidence, neither party in the case being concluded unless both are alike bound. Such seem to be the views of Greenleaf, who also adds: "It is generally deemed sufficient if the matters in issue were the same in both cases, and the party against whom the deposition is offered had full power to cross-examine." 1 Greenl. Ev. § 553. See, also, *Dawson* v. *Smith*, 3 Houst. 335; *Haupt* v. *Henninger*, 37 Pa. St. 138; *Turnley* v. *Hanna*, 82 Ala. 139, (2 South. Rep. 483;) *Parsons* v. *Parsons*, 45 Mo. 265.

It is true that in most of the cases where the deposition was admitted in the second suit, both the parties had been parties to the first, or in privity with those who were; but it will also be found, we think, that, in every case where the deposition was rejected, the party against whom it was offered was a stranger to the first suit, and hence had no opportunity to cross-examine. It is not necessary here to go so far as to hold, and we do not wish to be un-

derstood as holding, if this was an action between plaintiff and Briggs, that a deposition taken in another and former action between plaintiff and Herring would be admissible. It will be time enough to decide that question when it arises. Here it is all one and the same action, although some are parties as plaintiffs, others as defendants, and still others as intervenors; and while it is true that Briggs and Herring came into the action independently of each other, yet so far as the issue bearing upon plaintiff's right to a resulting trust in the property, and to which alone the deposition related, the case stood practically the same as if the intervenors had tendered it jointly. Plaintiff had to meet it alike as to both. If the deposition was not evidence on that issue for Briggs as well as Herring, it might result in the anomaly of the court having to find the facts in two diametrically opposite ways in the same case. We think the deposition was admissible in favor of Briggs. The objections to the deposition on the motion to suppress were all based on mere technical verbal criticisms of the language of the commissioner's certificate, and are, in our judgment, without merit. The evidence abundantly sustains the findings of fact in accordance with the contention of the intervenors, and this is fatal to plaintiff's claim, inasmuch as he was not a creditor of George W. Bray in 1885, at the time of the conveyance from Telfer to Usher.

We are inclined to think that the same result would follow under plaintiff's own contention as to the facts; for, if a resulting trust arose under the conveyance from Usher to William L. Bray, it was in favor of all other existing creditors as well as plaintiff, in which the individual creditors of George W. Bray would be entitled to a priority over the creditors of the two partnerships of which he was a member; and whatever obstacles there might have been in the way of enforcing that trust, under the assignment alone, they were obviated by Bray's voluntarily turning over the property to the assignee. But it is not necessary either to decide or discuss this question.

A point is made that Briggs had no right to intervene. If he had no right to come into the case as an "intervenor," technically so called, and file a complaint of intervention, he certainly could have been allowed to come in as a defendant, and, by way of answer or

supplemental answer, defend the title which he had acquired by the conveyance from W. L. Bray. It is immaterial now to consider which would have been the proper method. By acquiescing in his coming into the action as he did, and joining issue with him, the plaintiff has waived everything except that his pleading did not state a cause of action or defence, whichever it might be called. As Herring (to whom the decision of the trial court was adverse) does not appeal, the case is freed from all questions as to his claim.

Judgment affirmed.