Argued and submitted June 4,
reversed and remanded September 25, 1979

HUNTER, Petitioner,
*Respondent/Cross-appellant,*

*v.*

CRAFT, Personal Representative
and Proponent, *Petitioner,*

HUNTER, Contestant,
*Respondent/Cross-appellant,*

HUNTER, et al,
*Heirs and Devisees.*

(No. P-48-76, CA 9254, SC 26090)

600 P2d 415

Thomas C. Howser, Ashland, argued the cause for petitioner. With him on the brief were Ronald K. Cue, and Cottle, Howser & Hampton, Ashland.

Joel B. Reeder, Medford, argued the cause and filed a brief for respondent-cross/appellant Louise E. Hunter.

John W. Eads, Jr., Medford, argued the cause for respondent/cross-appellant Clinton R. Hunter. On the brief were Karen C. Allan, and Frohnmayer, Deatherage, Foster & Purdy, Medford.

PETERSON, J.

Denecke, C. J., concurring opinion.

Linde, J., concurring opinion.

**PETERSON, J.**

Appellant Clifford Craft petitions this court for review of a Court of Appeals order denying attorney fees and expenses he incurred on appeal in *Hunter v. Craft*, 37 Or App 545, 588 P2d 617 (1978).

This case involves a will contest in which Clifford Craft, as the personal representative named in the will of George Hunter, petitioned for probate of the will. Louise Moon Hunter, decedent's widow, petitioned to have the will declared revoked by operation of ORS 112.305[1] and requested distribution of the entire estate to her as the sole intestate heir. Clinton Hunter also asserted that the will was revoked by operation of ORS 112.305, that he was the decedent's son, and that he was entitled to an intestate share of the distribution.

The trial court decreed that the will was revoked by the subsequent marriage of the testator, that the decedent died intestate, that Clinton Hunter was not the son of decedent, and that Craft should be awarded attorney fees and expenses. Craft appealed the refusal of the trial court to admit the will to probate, Louise Moon Hunter cross-appealed the award of attorney fees and litigation expenses to Craft, and Clinton Hunter cross-appealed the denial of his petition to share in distribution of the estate.

The Court of Appeals held that the will was revoked by the subsequent marriage of the decedent, reversed the trial court's denial of Clinton Hunter's petition to

---

[1] ORS 112.305 provides:

"A will is revoked by the subsequent marriage of the testator if the testator is survived by his spouse, unless:

"(1) The will evidences an intent that it not be revoked by the subsequent marriage or was drafted under circumstances establishing that it was in contemplation of the marriage; or

"(2) The testator and his spouse entered into a written contract before the marriage that either makes provision for the spouse or provides that the spouse is to have no rights in the estate of the testator."

share in the distribution, and affirmed the trial court's award to Craft of attorney fees and litigation expenses incurred in the trial court.

Even though unsuccessful in the Court of Appeals, Craft filed a motion for attorney fees and other expenses incurred incident to the appeal. Craft's motion was denied by the Court of Appeals, without opinion. Review was requested and granted on but one issue: Where a personal representative in good faith unsuccessfully prosecutes an appeal from the denial of a petition to admit a will to probate, is the personal representative entitled to recover necessary expenses and attorney fees incurred on appeal? We answer this question in the affirmative.

### Statement of Parties' Contentions

Craft claims entitlement to necessary expenses and attorney fees under a line of cases culminating with *In re Feehely's Estate*, 182 Or 246, 187 P2d 156 (1947), and under ORS 116.183(2), which provides:

> "A personal representative who defends or prosecutes any proceeding in good faith and with just cause, whether successful or not, is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorney fees, in the proceeding."

The other parties resist Craft's petition for costs and attorney fees, citing *Adair v. McAtee*, 236 Or 391, 385 P2d 621, 388 P2d 748 (1964); *In re Carlson's Estate*, 156 Or 597, 68 P2d 119 (1937); *In re Shepherd's Estate*, 152 Or 15, 41 P2d 444, 49 P2d 448 (1935).

They also claim that there was no "just cause" for pressing the appeal, and that the costs and attorney fees sought are not reasonable.

### Oregon Cases Allowing Attorney Fees to Personal Representative on Appeal

In a number of cases we have held that a personal representative, in defending a will offered for probate in good faith, is entitled to recover his expenses and

attorney fees both in the trial court and on appeal, even though unsuccessful.

As early as 1926, in *In re Will of Hough*, 120 Or 223, 227, 251 P 711 (1926), we held:

"It is the duty of an executor to appeal if in good faith he is satisfied that the will has been improperly rejected. The duty is imposed upon an executor or executrix to execute the will of the testator. The executrix is the sole trustee for all persons having an interest therein and the only legal representative of the estate of the deceased. If, as in the present case, the executrix could not properly execute the will and carry out the trust in accordance with the decree of the trial court, it was appropriate for her to appeal in the interest of all concerned."

Relative to the duty of the personal representative, we stated in *In re Shepherd's Estate*, 152 Or 15, 42-43, 41 P2d 444, 49 P2d 448 (1935):

"Under the procedure which has been adopted and followed in this state the duty is imposed upon the executor after the will has been probated in common form to defend it against attack when he has reasonable ground to believe the will valid; and in such instances it has been the common practice of the court to allow to the executor, whether successful or unsuccessful, if he acts in good faith, the reasonable expense incurred in such defense, including attorneys' fees. * * * The fact that he was a beneficiary under the will did not lessen his duty or his right as executor to have such expense paid out of the estate."

However, costs and expenses of the personal representative were not allowed in *In re Carlson's Estate*, 156 Or 597, 605, 68 P2d 119 (1937), because the personal representative was "seeking to sustain a will which he did not honestly believe was the deceased's last [will]."

*In re Feehely's Estate*, 182 Or 246, 187 P2d 156 (1947), involved an estate in which the executor claimed attorney fees for appealing the denial of a petition for the sale of real property in the estate. The executor's appeal was unsuccessful.

The statute then in effect, OCLA § 19-1009, provided:

"An executor or administrator shall be allowed, in the settlement of his account, all necessary expenses incurred in the care, management, and settlement of the estate, including reasonable attorney fees in any necessary litigation or matter requiring legal advice or counsel. * * *."

The Court held (182 Or at 256-57):

"Notwithstanding the executor, had there been no appeal, would have been protected had it abided by the decision of the probate court, it still remained its duty to execute the will of the testatrix. *In re Will of Hough*, 120 Or. 223, 227, 251 P. 711. The executor was of the opinion that, under the language of the will, properly construed, it had no authority to use income to pay claims against the estate. That it was not without a reasonable basis for that opinion is manifest. The question was a novel one in this state. The Probate Court had rendered two decisions supporting the executor's view, and, as indicated by the opinion of this court in the case, there was substantial judicial authority on its side of the question. Under these circumstances, we think that in the sense of the statute the litigation was necessary, that it was the duty of the executor to prosecute the appeal, and that for its defeat in this court it should not be penalized by being required to pay its counsel fees and costs. *In re Johnson's Estate*, 100 Or. 142, 162, 196 P. 385, 1115. The conduct of the executor 'is to be tested by the rule of good faith, and not by mere success.'* * *."

The court held that the expenses incurred by the executor in prosecuting the appeal "were properly chargeable upon the estate fund."

And in *Hofen v. U. S. National Bank et al*, 215 Or 603, 608, 335 P2d 86 (1959), we awarded "reasonable disbursements * * *, including a reasonable attorney's fee" to a losing executor on appeal. In that case, the executor had prevailed in the trial court.

### Applicability of Adair v. McAtee

Attorney fees on appeal were claimed in *Adair v. McAtee*, 236 Or 391, 385 P2d 621, 388 P2d 748 (1964), pursuant to a contract containing a provision that "in case suit or action is instituted to collect said sum or any part thereof, purchaser promises to pay such additional sum as the Court may adjudge reasonable as Attorney's fees in such suit or action." We examined earlier Oregon cases involving the award of attorney fees on appeal, and acknowledged that they were "in hopeless confusion." 236 Or at 394. We resolved that confusion by adopting the rule that in the absence of a statute or contractual provision which specifically granted the right to attorney fees on appeal we would not award attorney fees on appeal. We neither cited nor discussed any of the probate cases discussed above.

Since *Adair*, we have adhered to the rule that unless an applicable statute expressly provides for attorney fees on appeal no award of attorney fees will be made,[2] but we have not (since *Adair*) addressed the issue of whether attorney fees should be allowed to a personal representative who unsuccessfully prosecutes an appeal.

### Legislative History of ORS 116.183(2)

Revisions to the Oregon Probate Code were made in 1969. Or Laws 1969, ch 591. Section 185 included what is now ORS 116.183(2). It does not expressly provide for attorney fees on appeal.

Louise Moon Hunter and Clifton Hunter argue that *Adair* prohibits an award of attorney fees. The failure of the 1969 legislative amendments to provide for attorney fees on appeal gives some credence to their

---

[2] *Richards v. Watrous*, 287 Or 345, 599 P2d 460 (1979); *Cons. Elec. v. Jepson Elec.*, 272 Or 384, 537 P2d 83 (1975); *McMillan v. Golden*, 262 Or 317, 497 P2d 1166 (1972); *State v. Jamison*, 251 Or 114, 444 P2d 15, 444 P2d 1005 (1968); *Wakehouse v. Wetzel*, 250 Or 391, 443 P2d 227 (1968); *State ex rel Nilsen v. Adams*, 248 Or 269, 431 P2d 270 (1967); *Uris v. Compensation Department*, 247 Or 420, 427 P2d 753, 430 P2d 861 (1967); *First National Bank v. Malady*, 242 Or 353, 408 P2d 724 (1965).

argument. We are persuaded, however, that we should adhere to the rule allowing attorney fees to a personal representative who prosecutes an appeal in good faith.

A study of the legislative history of ORS 116.183(2) is not productive. There is no discussion in the record, one way or the other, as to the legislative intent in adopting the new language. We cannot determine whether the legislative intent was to follow the *Adair* rule or to follow the rule of *Feehely, supra.*

It is clear from the face of the statute that the legislature intended that the personal representative recover attorney fees, "whether successful or not." The quoted language did not appear in the predecessor statute, ORS 117.660, formerly OCLA § 19-1009.

And there is nothing in the legislative history indicating a rejection of the *Feehely* rule.

We turn, then, to a discussion of the policy involved in this determination.

### A Personal Representative Who Prosecutes a Proceeding In Good Faith Will be Allowed Attorney Fees

As a practical matter, a personal representative who has no personal interest in the outcome (as in the case at bar) is faced with a dilemma. The prospect of not recovering attorney fees on appeal would require a personal representative to choose between breaching the duty to appeal or to resist an appeal, or paying for the appeal with personal funds, a choice especially unfair where the personal representative is not a beneficiary under the will and has nothing to gain regardless of the outcome of the appeal.

The reasons of public policy supporting the *Feehely* rule are as valid today as in 1947. Such a rule protects a personal representative who, with good cause, discharges what is deemed to be a duty under the will. It is consistent with a long-standing judicial construction of the statutes preceding ORS 116.183(2), and we

believe that the affirmation of this rule today will result, more often than not, in the accomplishment of the testator's intent, and that the public interest will be served. *In re Will of Hough,* 120 Or 223, 227, 251 P 711 (1926). We therefore hold that if the personal representative prosecutes an appeal in good faith, necessary expenses and attorney fees on appeal are recoverable from the estate.

The Court of Appeals, in affirming the award of attorney fees and expenses in the trial court, stated (37 Or App at 556) that the personal representative's actions "were taken in good faith," but made no such finding as to the taking of the appeal.

We therefore remand to the Court of Appeals to determine whether the appeal in this case was taken in good faith, and if so, for the award of a reasonable attorney fee and necessary expenses.

Reversed and remanded.

**DENECKE, C. J.,** specially concurring.

I concur in the decision of the majority that the personal representative is entitled to attorney fees for legal services rendered in the appeal. I specially concur to further distinguish *Adair v. McAtee,* 236 Or 391, 385 P2d 621, 388 P2d 748 (1964), and the many cases following *Adair.*

The reasoning of the parties opposing the award of attorney fees is that *Adair v. McAtee, supra,* (236 Or 391), holds that attorney fees cannot be awarded on appeal unless the statute or contract providing for the allowance of attorney fees expressly provides for fees on appeal. ORS 116.183(2) does not expressly provide for attorney fees on appeal; therefore, no fees may be awarded. In my opinion that reasoning is incorrect.

In *Adair v. McAtee, supra,* (236 Or 391), and in all its predecessors and successors, the issue was whether the prevailing party was entitled to a judgment for

attorney fees for services rendered on appeal against the opposing party. In answering that question we start with the proposition "that in the absence of a contractual or statutory provision a litigant is not entitled to attorney fees in addition to the ordinary costs." *Brookshire v. Johnson*, 274 Or 19, 21, 544 P2d 164 (1976). *Adair* went on to hold that the statutory or contractual provision providing for attorney fees must be explicit if it were to properly provide for attorney fees on appeal.

In the present case the prevailing party is not attempting to recover fees from the opposing party. The personal representative is in effect attempting to be reimbursed for fees expended on behalf of his client. There is no policy reason why the statute allowing attorney fees to personal representatives should be strictly construed. The equities all favor the reimbursement of the personal representatives.

**LINDE, J.,** concurring.

I agree that the expenses and disbursements of a legal proceeding which a personal representative may recover from an estate include attorney fees on appeal, if the appeal is taken "in good faith and with just cause" and the fees are "necessary." ORS 116.183(2).[1] I only add a few words to draw attention to the fact that by "good faith" in this context the court means more than absence of fraud, deceit, or some corrupt purpose. The appeal must have been pursued in a genuine and reasonable belief that there was at least a serious possibility, though perhaps less than a probability, that the decision appealed from would be reversed or modified, before the estate can be charged for the expenses of the appeal. The statute itself uses the qualifying terms "just cause" and "necessary." The

---

[1] ORS 116.183(2):

"A personal representative who defends or prosecutes any proceeding in good faith and with just cause, whether successful or not, is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorney fees, in the proceeding."

[474]

cases reviewed by the Court variously refer to "reason-able ground," *In re Shepherd's Estate*, 152 Or 15, 42, 41 P2d 444, 49 P2d 448 (1935), or "reasonable basis," *In re Feehely's Estate*, 182 Or 246, 256, 187 P2d 156 (1947). Our present opinion speaks of "good cause."

The term "good faith" standing alone poses a prob-lem when the personal representative is not a lawyer, for if it merely meant "honesty" the estate would be liable whenever the personal representative followed counsel's suggestion to appeal, no matter whether that suggestion was well considered. But the phrases quoted by the court demand more. The estate need not pay the expenses of an appeal taken only in order to play it safe, to secure the personal representative, or counsel, against possible criticism. The personal repre-sentative must make a "good faith" effort to ascertain within a layman's capabilities that there is "just cause" for the appeal, in the statutory phrases, and that the expenses are "necessary" and the attorney fees will be "reasonable." Otherwise, settlement of these expenses will be a matter between the personal representative and the attorney, not the estate.