Argued and submitted June 9, affirmed August 18,
reconsideration denied October 16, 1980
petition for review denied January 13, 1981 (290 Or 302)

# SMITH,
## *Appellant,*
### *v.*
# UNITED STATES NATIONAL BANK
# OF OREGON,
## *Respondent.*

## (No. A 7711-16968, CA 15726)

615 P2d 1119

John D. Ryan, Portland, argued the cause for appellant. F. Leo Smith, Portland, filed the briefs pro se for appellant.

James R. Cartwright, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Plaintiff F. Leo Smith, the attorney for defendant United States National Bank, the personal representative of the estate of Ethel Kelly, deceased, brought an action at law against defendant seeking damages for its refusal to appeal (1) the probate court's award under ORS 116.183 of attorney fees of $4,240 to the personal representative, $1,760 less than the amount requested by plaintiff as his fee, and (2) the court's denial of plaintiff's request for additional attorney fees for services in connection with the hearing at which the probate court awarded the $4,240 attorney fees to the personal representative. The trial court ruled, *inter alia,* that defendant had neither a contractual nor statutory duty to appeal the rulings, that defendant exercised good faith in its decision not to appeal, and that plaintiff failed to prove he was damaged by defendant's refusal to appeal. Plaintiff argues generally that he was deprived of a fair hearing and challenges certain of the trial court's findings of fact and conclusions of law. We affirm.

In the final account filed by defendant as personal representative of the Kelly estate, defendant included at plaintiff's request a prayer that the sum of $6,700 be fixed by the probate court as the regular and extraordinary fee for plaintiff as the personal representative's attorney. The final account also stated that plaintiff asked the personal representative not to approve of the attorney fees, and that plaintiff preferred to submit the matter to the court. Objections were filed to the request for attorney fees. Plaintiff subsequently reduced his requested fee to $6,000. After a hearing on the matter before the probate court, during which plaintiff was represented by counsel and presented expert testimony in support of his claim, the trial court ruled that the attorney fees should be set at $4,240. The personal representative then petitioned for an additional $1,200 in attorney fees for legal services performed by plaintiff in connection with the hearing

[969]

on the objection to attorney fees. Another hearing was held, after which the court denied this request.

Plaintiff was dissatisfied with these rulings and wanted the personal representative to appeal the two rulings to this court. Plaintiff contended that he could not appeal on his own behalf, since he was not a party to the probate proceedings. After a series of discussions between plaintiff and defendant's trust officer, who was handling the Kelly estate, defendant agreed to lend its name to the appeal solely for the purpose of assuring plaintiff a vehicle to present his views. Defendant, however, refused to expend estate funds or bank funds and insisted that plaintiff bear all costs of the appeal. Plaintiff balked at this condition, arguing that for an attorney to advance to his client the costs of litigation without a guaranty of reimbursement would be to violate provisions of the Code of Professional Responsibility concerning champerty and maintenance. As a result of the failure of plaintiff and defendant to agree on the ultimate responsibility for expenses of an appeal prior to the running of the time for filing the notice of appeal, the appeal was never taken. This action followed.

In order to prove his cause of action against defendant, plaintiff must show: (1) a contractual or statutory duty running from the personal representative to the plaintiff to appeal the probate court's rulings on attorney fees;[1] (2) a breach of that duty; (3) that if an appeal had been taken, the appellate court would have granted the requested relief; and (4) that defendant knew or should have known that the probate court would have been reversed on appeal.

■ ■ Plaintiff's first assignment of error states, "The court erred in accepting the trial of this case, or in not continuing a hearing on the findings of fact and conclusions of law and in not granting a new trial."

---

[1] It is unclear whether this action is in tort or contract. Since at trial the parties and the court appeared to proceed on the basis that plaintiff had to prove a contractual, statutory or other duty to appeal, we will address both issues.

Aside from various criticisms of the trial court which do not merit discussion, the crux of this assignment seems to be that the trial court disagreed with plaintiff's position. We observe that plaintiff at no time requested a continuance and did not point out to the trial court any of the alleged inadequacies in the hearing that he now assigns as reversible error. Further, the failure to grant a new trial is not grounds for an assignment of error. *Martin Engineering Co., Inc. v. Opton,* 277 Or 291, 560 P2d 617 (1977).

In plaintiff's second assignment of error he challenges several of the trial court's findings of fact and conclusions of law. A number of plaintiff's objections go only to the wording of the particular findings. We decline to discuss those arguments in an opinion and will address only those contentions which affect the decision on the merits.

■   Plaintiff argues that the trial court erred in finding that there was no agreement between plaintiff and defendant that defendant would appeal the two rulings, and in concluding that defendant had no contractual duty to appeal. From plaintiff's testimony at trial it is apparent no such agreement was made. He indicated that at one point he and defendant's trust officer, Mr. Zahala, had reached an agreement under which plaintiff would be responsible for the expenses of an appeal. He stated, however, that later he concluded that such an agreement would violate Bar rules against champerty and maintenance and brought the matter to Mr. Zahala's attention. Mr. Zahala steadfastly refused to agree on behalf of the bank that the bank would reimburse plaintiff for his expenses on appeal or expend estate funds for that purpose. Thus, plaintiff conceded that defendant never agreed unequivocally to all of the terms plaintiff attempted to impose on it. Mr. Zahala also testified that he never reached an agreement with plaintiff on conducting an appeal. We conclude that there was substantial evidence to support the trial court's finding, and that the

court was correct in concluding that defendant had no contractual duty to appeal.

Plaintiff also contends that the trial court erred in concluding that defendant had no legal duty to appeal. Such a duty is found under the circumstances, plaintiff asserts, from the relationship between a personal representative and its attorney and from ORS 116.183, which provides:

"(1) A personal representative shall be allowed in the settlement of his final account all necessary expenses incurred in the care, management and settlement of the estate, including reasonable fees of appraisers, attorneys and other qualified persons employed by him. An award of reasonable attorney fees under this section shall be made after consideration of the customary fees in the community for similar services, the time spent by counsel, counsel's experience in such matters, the skill displayed by counsel, the excellence of the result obtained, any agreement as to fees which may exist between the personal representative and his counsel, the amount of responsibility assumed by counsel considering the total value of the estate, and such other factors as may be relevant. No single factor shall be controlling.

"(2) A personal representative who defends or prosecutes any proceeding in good faith and with just cause, whether successful or not, is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorney fees, in the proceeding."

Under ORS 114.405(1) and (2),[2] the personal representative is not personally liable for attorney fees earned by his attorney in probating the estate unless

[2] ORS 114.405(1) and (2) provide:

"(1) The personal liability of a personal representative to third parties, as distinguished from his fiduciary accountability to the estate, arising from the administration of the estate is that of an agent for a disclosed principal.

"(2) A personal representative is not personally liable on contracts properly entered into in his fiduciary capacity in the course of administration of the estate unless he expressly agrees to be personally liable."

* * *

he agrees to be personally liable. Rather, the personal representative requests in his final account court approval of reimbursement from the estate for reasonable attorney fees, which are then paid to the personal representative's attorney.[3] It is the personal representative's role in assuring that the attorney receive reasonable attorney fees and the lack of any statutory procedure in the Probate Code by which a dissatisfied attorney can appeal, plaintiff argues, that create the personal representative's duty to appeal an inadequate award.

Citing *In re Feehely's Estate,* 182 Or 246, 187 P2d 156 (1947), plaintiff appears to argue that the personal representative knew that there was a "substantial question" of whether the probate court's rulings on attorney fees were proper and, therefore, had a duty to appeal those rulings. In *In re Feehely's Estate,* the executor had petitioned the probate court for an order authorizing the sale of certain real property of the estate to pay claims against the estate. The proposed sale was contested. After twice ruling in the executor's favor, the trial court reversed itself and revoked its previous order authorizing the sale of the property. On appeal by the executor, the Supreme Court affirmed. The legal question involved was whether under the terms of the will as properly construed under applicable law the rental proceeds from the property sought to be sold were available to pay claims against the estate. If the use of such funds, which were sufficient to satisfy the claims, was permissible, then the sale of the property would be unnecessary. The Supreme Court held that those funds could be used for payment of claims.

The appellants in that case had originally contested the sale. They argued that under § 19-1009, O.C.L.A. (a predecessor of ORS 116.183) the appeal

---

[3] It appears from the record that in practice the personal representative is often not being "reimbursed," since he has paid no attorney fees out of his own pocket. Rather, the attorney must depend for his fees upon court approval of the personal representative's request in the final account.

brought by the executor was unnecessary litigation and the executor was not entitled to reimbursement for his expenses. The court noted that it was the executor's duty to defend the will and that there was "substantial judicial authority" to support the executor's position. The court then held that under the circumstances, the litigation was "necessary" within the meaning of the statute, that it was the executor's duty to prosecute the appeal, and that the executor was entitled to be reimbursed by the estate for its counsel costs and fees.

*In re Feehely's Estate* does not control the present case. In that case, the executor in prosecuting the appeal was acting in accord with his fiduciary duty to defend the will. *See* ORS 114.265. In contrast, defendant here had no fiduciary duty to the estate to appeal for the attorney's benefit.

■ Even where an attorney has an interest in litigation, such as a contingent fee contract, in the absence of bad faith by the client against the attorney in refusing to proceed with litigation the client is under no duty to appeal an adverse trial court judgment. *In re Grimes' Estate*, 170 Or 204, 131 P2d 448 (1942). *Cf. Jackson v. Stearns*, 48 Or 25, 84 P 798 (1906) (where parties collusively settle action before judgment or decree has been rendered, pursuant to intent to defraud the attorney of his fees, the court will permit the attorney to proceed in the name of his client as plaintiff for the purpose of determining what sum is due for services). In *In re Grimes' Estate*, the plaintiff, an attorney, represented a woman in the presentation of her claim against the estate of the deceased. The attorney was retained on a contingent fee basis. After an adverse judgment in the trial court, the claimant refused to appeal. The plaintiff then attempted to prosecute an appeal in his own name to protect his interest in the matter, basing his right to do so largely on § 67-1601, O.C.L.A., which provided:

> "An attorney has a lien for his compensation, whether specially agreed upon or implied, as provided in this section:

[974]

\* \* \* \* \*

"(2) Upon action, suits and proceedings after the commencement thereof, and judgments, decrees, orders and awards entered therein in his client's favor and the proceeds thereof in whosesoever hands they may be or come, to the extent of the fees and compensation specially agreed upon with his client, if there be such agreement, and if not, for the reasonable value of his services, and such lien shall not be affected by any settlement between the parties to the action, suit or proceeding before or after judgment, decree, order or award. Said lien shall be superior to all other liens except tax liens, and no party to the action, suit or proceeding, or other person, shall have the right to satisfy said lien, or any judgment, decree, order or award entered therein until the lien, and claim of the attorney for his fees based thereon, is satisfied in full; \* \* \*. Attorneys shall have the same right and power over said actions, suits, proceedings, judgments, decrees, orders and awards to enforce their liens as their clients had or may have for the amount due thereon to them. \* \* \*"

Claimant filed a motion to dismiss the appeal.

In holding that the appeal should be dismissed, the court quoted with approval the following statement from Thornton on Attorneys at Law § 646; 2 R.C.L. p. 1000:

"It is quite well settled that, where the plaintiff in a case becomes satisfied that his cause of action lacks merit, he may discontinue the suit, and surely where a trial of the cause of action has been had, and an adverse judgment rendered, there is no obligation upon the plaintiff to further carry on the litigation simply because his counsel desires to do so. It is not the policy of the law to protract or continue litigation, but when a party to a suit in good faith becomes satisfied that his contention is without merit, and desires to abandon it, he must be allowed to do so." *Quoted at* 170 Or at 220.

The attorney's lien on actions, suits, and proceedings under § 67-1601, O.C.L.A., now provided for in ORS 87.445, is at least as significant an interest in

litigation as is that of plaintiff's here. Further, the personal representative here has a fiduciary duty to the estate to preserve the estate's assets, ORS 114.265. As is shown by the facts here, that duty, one of the primary ones with which the personal representative is charged, may weigh against an appeal and thus become adverse to the attorney's personal interest. In *Hunter v. Craft,* 287 Or 465, 600 P2d 415 (1979), the court, in holding that a personal representative who prosecutes an appeal in good faith may recover necessary expenses and attorney fees from the estate, explored the dilemma faced by a personal representative with no personal interest in the outcome in deciding whether or not to appeal. The court stated:

"As a practical matter, a personal representative who has no personal interest in the outcome (as in the case at bar) is faced with a dilemma. The prospect of not recovering attorney fees on appeal would require a personal representative to choose between breaching the duty to appeal or to resist an appeal, or paying for the appeal with personal funds, a choice especially unfair where the personal representative is not a beneficiary under the will and has nothing to gain regardless of the outcome of the appeal." 287 Or at 472.

This dilemma could be far more difficult if the personal representative were forced at his own risk to resolve the tension between his duty to the estate and a duty toward the attorney. Whatever duty from the personal representative to the attorney may be implied from ORS 114.405 and 116.183 must be secondary to the personal representative's obligation toward the estate. These sometimes conflicting obligations may, however, be accommodated by the rule that, at least in the absence of bad faith or fraud to deprive the attorney of reasonable attorney fees, the personal representative is not liable for refusing to appeal a trial court ruling awarding a lesser amount to the personal representative for attorney fees than that requested or considered reasonable by the attorney. There is no allegation of or evidence to prove bad faith or fraud

[976]

here. The trial court properly ruled that defendant had no legal duty to appeal the probate court's rulings on attorney fees.

From our review of the record we also conclude that the probate court's rulings on attorney fees would not have been reversed on appeal.

■ ■ The determination of attorney fees to be allowed out of the funds of the estate is a matter which rests within the sound discretion of the probate court which will not be disturbed on appeal unless there has been an abuse of discretion. *In re Lachmund's Estate,* 179 Or 420, 170 P2d 748 (1946). At the first hearing on attorney fees, there was uncontested expert testimony that the fee requested by plaintiff was reasonable. Plaintiff admitted, however, that the time sheets submitted to prove his services were sketchy and incomplete. There was also expert testimony to the effect· that the amount of time plaintiff claimed to have ·· spent on the case was far in excess of what would be reasonable, although the same witness testified that even on the basis of the lesser amount of hours the $6,000 requested was reasonable. We conclude that the probate court did not abuse its discretion.

■ Nor would the probate court's denial of attorney fees for plaintiff's services in connection with the hearing on the objection to attorney fees have been reversed on appeal. There is no transcript of the hearing on the request for the $1,200 in attorney fees on the record on appeal. It is the appellant's duty to make his record. On the basis of the record before us we cannot hold that the challenged order would have been reversed on appeal.

We hold that plaintiff failed to prove a cause of action in either tort or contract against the personal representative.

Affirmed.